Charles L. Flaccus v. Commissioner.
Flaccus v. Commissioner
Docket Nos. 111359, 112777.
United States Tax Court
1943 Tax Ct. Memo LEXIS 10; 2 T.C.M. (CCH) 1180; T.C.M. (RIA) 43528; December 19, 1943
*10 Fred C. Houston, Esq., for the petitioner. Laurence F. Casey, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: These proceedings, consolidated for hearing, involve gift tax deficiencies for 1939 and 1940 of $2,637.67 and $3,258.74, respectively. The following questions are presented for decision: (1) Whether respondent correctly valued gifts consisting of shares of common stock of the Diamond Alkali Company in 1939 and 1940 at the market values of the shares as at the dates of the gifts; (2) Whether 1939 and 1940 gifts in trust for Charles L. Flaccus III were taxable gifts in trust; (3) Whether in computing for 1939 gifts for prior years absolute assignments of certain insurance policies made by the petitioner in 1935 should be excluded from the total. [The Facts] The facts are shown by the pleadings and a signed stipulation of facts, supplemented by the testimony of one witness. The stipulation of facts is incorporated herein by reference. The petitioner is a resident of Indiana Township, Allegheny County, Pennsylvania. He filed gift tax returns for 1939 and 1940 with the collector of internal revenue for the 23rd district of Pennsylvania, at Pittsburgh, *11 and paid gift tax shown to be due thereby of $293.25 and $701.26, respectively. In his gift tax return for 1939 he showed five gifts of Diamond Alkali Company common stock consisting of 446 shares at a value of $50 per share. Three gifts aggregating 216 shares are shown as having been made on December 1, 1939, and two gifts aggregating 230 shares as having been made on December 19, 1939. In such return he showed the total amount of net gifts for preceding years as $181,410.01. This total included a net gift in 1935 of $21,410.01. This total represents the value in excess of $5,000 of six insurance policies on the life of the petitioner which the petitioner in December, 1935, absolutely assigned to his wife. After such assignment the petitioner had no right, title, or interest in or to the policies. The assignee had the right to borrow on the policies or to surrender them for cancellation. The 1939 gift tax return showed a transfer of 48 shares of Diamond Alkali Company common stock on December 1, 1939, to Charles L. Flaccus III, grandson of the donor. Although the gift tax return for 1939 shows the gifts of 446 shares of Diamond Alkali Company common stock to have been made on December *12 1 and December 19, 1939, as above indicated, the shares of stock were not transferred into the names of the donees until December 20. The 48 shares intended as a gift for Charles L. Flaccus III were transferred into the name of "Charles L. Flaccus in trust for Charles L. Flaccus III." The petitioner's gift tax return for 1940 shows five gifts of 100 shares each of Diamond Alkali Company made by the petitioner on December 19, 1940. These were valued for gift tax purposes at $50 per share. Of the 500 shares, 100 shares represented a gift in trust to Charles L. Flaccus III. A certificate for the 100 shares was issued by the transfer agent on December 19, 1940, in the name of "Charles L. Flaccus in trust for Charles L. Flaccus III." In the determination of the deficiencies the respondent found the value of the 216 shares designated as a gift on December 1, 1939, to be $88 a share instead of $50 a share; the 230 shares given on December 19, 1939, to be $84 a share instead of $50 a share; and the value of the 500 shares given on December 19, 1940, to be $80 a share instead of $50. The stock of the Diamond Alkali Company is not listed on any exchange but is sold over the counter, the *13 principal trader being Chaplin & Company, of Pittsburgh, Pa., a member of the New York and Pittsburgh stock exchanges. In 1940 trading in the stock was also handled by Singer, Deane & Scribner, Pittsburgh brokers. In 1939 and 1940, 1,062,434 shares of common stock were outstanding. During the month of December the records of Chaplin & Company showed the sales of 1,324 shares of stock at prices ranging from $82 to $89 per share. Fifty shares were sold on December 1, 1939, at $88 per shares; 100 shares on December 9 at $85 per share; 500 shares on December 13 at $86 1/8; 10 shares on December 16 at $83 1/4; 60 shares on December 18 at $83 1/4; 35 shares on December 20 at $82 1/2; and 50 shares on the same date at $84. Chaplin & Company sold 248 shares of the stock during December, 1940, as follows: Date
Number of Shares
Price
Dec. 9
200 $81
Dec. 14
34
82
Dec. 31
14
80
Sales of the stock by Singer, Deane & Scribner during December, 1940, were as follows: Date
Number of Shares
Price
Dec. 5
105 $85
Dec. 6
40
80
Dec. 7
50
81
Dec. 23
50
79
Dec. 27
4
80
Dec. 28
50
79
Dec. 30
50
80
On December 10, 1940, Chaplin & Company purchased 100 shares *14 of Diamond Alkali Company stock at $79 per share and on December 14, 1940, 50 shares at the same price. The book value of Diamond Alkali Company stock in December 1939, was $28.50 per share. The net earnings per share for the years 1937 to 1940, inclusive, based on 1,062,434 shares now outstanding, were as follows: 1937
$3.79
1938
3.24
1939
4.55
1940
4.52
The dividends per share paid for the years 1937 to 1940, inclusive, were as follows: 1937
$3.00
1938
1.75
1939
3.90
1940
3.75
Dividends on the stock transferred into the name of "Charles L. Flaccus in trust for Charles L. Flaccus III" are, and always have been, mailed to the petitioner, the donor, at his office, 1330 Gulf Building, Pittsburgh, Pa., and have always been deposited by him in a checking account in the Union Trust Company of Pittsburgh in the name of Charles L. Flaccus in trust for Charles L. Flaccus III. The certificates covering such shares of stock held in trust have remained at all times in the possession of the donor. [Opinion] We consider first the contention of the petitioner that the gifts of shares of Diamond Alkali Company common stock to his grandson, Charles L. Flaccus, *15 III, were incomplete and not taxable gifts. The contention is that Charles L. Flaccus III during the years 1939 and 1940 was a minor, although this fact is not proven; that the gifts were revocable inasmuch as the donor always retained possession of the certificates and could have revoked them. There is no evidence that the petitioner did not intend to make absolute gifts in trust for the benefit of his grandson. He has not pleaded otherwise. Gifts in trust are subject to tax where it was the intention of the donor to make absolute gifts. There is no evidence before us which would support petitioner's claim that the gifts were incomplete. We therefore hold that this contention of the petitioner is without merit. We next consider the question as to whether the gifts reported in the petitioner's gift tax return for 1935 of six insurance policies upon his own life were absolute gifts. If so, they were properly included in the gift tax return made for 1939 as gifts of prior years. There is no question before us as to the amount of the net gift, viz., $21,410.01. The petitioner submits that "by reason of the fact that there is a possibility of a reverter in the life insurance assigned *16 by petitioner to his said wife, the gift was incomplete and $21,410.01 of petitioner's specific exemption remains intact." The basis of this contention is that as to at least some of the policies the proceeds were payable to the insured's estate in case of the death of the insured before the death of the assignee. It is well settled, however, that the possibility of a reverter to the donor does not render a gift incomplete. See ; . In the case of many gifts by a parent to his or her offspring there is a possibility that the donee may die before the donor in which case the gift may revert to the donor. Even though such a possibility may exist in a given case no valid argument can be made that the gift is not complete. The gift is complete in a case where, as here, the donor makes an absolute gift of all of his rights, title, and interest in and to the property given. The third question relates to the value of the shares of Diamond Alkali Company common stock at the dates of gift. The respondent has used the prices at which the shares of stock sold on *17 or about the dates of the gifts as representing the fair market value. The petitioner contends that there was only a very thin market for the stock and that the quoted prices do not represent the fair market value. He contends on brief that the value of the shares of stock at the dates of the gifts was not in excess of $60.375 per share. This amount is obtained by capitalizing the earnings over a four-year period ended in 1940 on a 15 percent basis. In any case the question of fair market value is a question of fact. The prices at which shares are sold between a willing seller and a willing buyer is the best evidence of fair market value, absent any evidence that such a price does not represent a dealing at arm's length. We have no such evidence here and the number of shares involved does not indicate that they could not have been sold at the values determined by the Commissioner, except in one instance as noted below. The petitioner makes a contention on brief that the gifts of 216 shares shown on the 1939 gift tax return as having been made on December 1, 1939, were actually made on December 19 or December 20, 1939. This contention is based solely upon the fact that the shares *18 of stock were not transferred into the names of the donees until such date. The date of the transfer of the shares on the record books of the transfer agent is not, however, any conclusive proof as to the dates of gift. The petitioner swears in his gift tax return for 1939 that 216 shares were given on December 1, 1939. He did not appear as a witness and testify that his return was in error. Counsel for the petitioner simply contends that the return was in error. In his petition the petitioner does not plead that the gift of 216 shares was not made on December 1, 1939. We think the respondent did not err in valuing the 216 shares as of December 1, 1939. We confirm the respondent's determination of $88 per share for the 216 shares given on December 1, 1939. That is the value and the only value shown for shares of stock sold on that date. The respondent has used a value of $84 per share for the 230 shares given on December 19, 1939. Sales of stock were made on December 16 and December 18 at $83 1/4 per share and the average price at which the sales were made on December 20, 1939, is the same. We therefore determine that the value of those shares was $83 1/4 per share instead of $84 *19 per share. The respondent's determination of $80 per share as the fair market value of the 500 shares given on December 19, 1940, is approved. Decision will be entered for the respondent in Docket No. 112777, and under Rule 50 in Docket No. 111359.